UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **HANSEL AGUILAR**<br>14394 Havener House Court<br>Centreville, VA 20120<br><br>    Plaintiff,<br><br>      v.<br><br>**DISTRICT OF COLUMBIA**<br>441 4th Street, N.W.,<br>Washington, D.C. 20001<br><br>    Defendant.<br><br>Serve  Mayor Muriel Bowser<br>        1350 Pennsylvania Ave., N.W.<br>        Suite 316<br>        Washington, D.C. 20004<br><br>        Office of the Attorney General<br>        441 4th Street, N.W.<br>        Suite 600 S<br>        Washington, D.C. 20001 | Case No.:<br><br>JURY TRIAL DEMANDED |

## CIVIL COMPLAINT FOR MONETARY AND EQUITABLE RELIEF

Plaintiff Hansel Aguilar, by and through undersigned counsel, files this Complaint against Defendant District of Columbia ("Defendant") for violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. for discrimination and retaliation based on his protected activity.

### NATURE OF THE ACTION

1. Plaintiff is an experienced police officer who began working for Defendant's Office of Police Complaints, in the District of Columbia, in October 2016. At first, Plaintiff received positive feedback about his performance and investigations. However, over the course of 2018,

Plaintiff was forced to take intermittent leave protected by FMLA to care for his mother. Over this time, Defendant began to discriminate against Plaintiff by actions such as unnecessarily cancelling his compressed work schedule, criticizing him for the lower rate of investigation production he was able to achieve due to the leave he used that was protected by the FMLA, and not promoting him although Defendant promoted other Investigators who did not take FMLA leave.

2. In December 2018, Plaintiff's mother's health needs increased and he was forced to request continuous leave protected by FMLA, instead of intermittent. In February 2019, just a few weeks after Plaintiff returned from approximately one month of continuous leave to care for his mother, Defendant served him with a Proposed Suspension. After Plaintiff attempted to defend the proposal, Defendant sustained the proposed suspension, suspended him for three days, and alleged that his actions defending the proposed suspension violated policy, and issued a Notice of Summary Removal. On May 15, 2019, Plaintiff was removed from his position and employment with Defendant.

3. This is an action to recover damages for discrimination, retaliation, and interference under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et.seq.*

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States of America, namely, the FMLA.

5. Venue in this district and division is appropriate pursuant to 28 U.S.C. § 1391 because Defendant has significant and deliberate contacts with this district and division, employed

Plaintiff in this district, and it is where the substantial majority of the events giving rise to these claims occurred.

## PARTIES

6. Plaintiff is a former employee of Defendant and a resident of Virginia. His address is 14394 Havener House Court, Centreville, Virginia 20120.

7. On information and belief, Defendant is a municipality organized under the laws of the United States and has its offices at 441 4th Street, N.W., Washington, D.C. 20001.

## STATEMENT OF FACTS

*Plaintiff's Employment with Defendant and Background*

8. Mr. Aguilar is a former police officer who holds a Bachelor's degree in Criminal Justice, a Master's degree in Sociology, and is in the process of completing a Ph.D. in Sociology at George Mason University.

9. On or about October 31, 2016, Mr. Aguilar became employed by Defendant at its agency the Office of Police Complaints.

10. Mr. Aguilar's duties focused on investigating complaints from the public concerning police conduct or events, writing reports on his investigation, and making recommendations for resolution.

11. Throughout Mr. Aguilar's employment, Mr. Aguilar's work product and conduct were exemplary.

12. Indeed, in or about late 2017, Mr. Aguilar received a performance evaluation for fiscal year 2017 reflecting his successful performance.

13. Further, Defendant selected Mr. Aguilar to attend the National Association for Civilian Oversight of Law Enforcement ("NACOLE") Conference on combined scholarship and at

Defendant's expense in 2017. Later, Defendant selected Mr. Aguilar to give two presentations at the 2018 NACOLE Conference.

14. In or about November 2017, Defendant approved Mr. Aguilar for a compressed work schedule.

*Plaintiff took FMLA leave and Defendant Scrutinized Plaintiff's Performance*

15. In or about early 2018, Mr. Aguilar's mother had a health condition that began to deteriorate.

16. Consequently, on or about February 8, 2018, Mr. Aguilar requested Paid Family Leave and intermittent leave under the District of Columbia FMLA ("DCFMLA").

17. On or about February 15, 2018, Defendant approved Mr. Aguilar's Paid Family Leave and intermittent DCFMLA.

18. Thereafter, Defendant's Michael Tobin, Director, and Rochelle Howard, Deputy Director required that Mr. Aguilar change his work schedule before approving him for intermittent leave on an as-needed basis.

19. Furthermore, Defendant rescinded Mr. Aguilar's compressed work schedule.

20. On or about March 8, 2018, Mr. Aguilar complied with Defendant's request to change his work schedule as required so that Defendant could approve him for intermittent leave on an as-needed basis.

21. Shortly thereafter, in or about the beginning of March 2018, Mr. Aguilar's supervisor, Chief Investigator, Mona Andrews, began to comment on the number of days Mr. Aguilar was late in submitting some assignments. In doing so, Ms. Andrews did not factor the days that Mr. Aguilar was on leave into her analysis of Mr. Aguilar's assignment deadlines. Moreover, Mr. Tobin commented that Mr. Aguilar's case submission numbers were declining.

22. These complaints were the first time in Mr. Aguilar's tenure that Ms. Andrews and Mr. Tobin criticized his performance.

*Defendant Lowered Plaintiff's Performance Evaluations*

23. On or about April 8, 2018, Defendant issued Mr. Aguilar his mid-year review. During Mr. Aguilar's mid-year review meeting, Ms. Andrews and Investigations Managers Robert Rowe and Natasha Smith asked Mr. Aguilar why he had not submitted as many case investigations as he had in the past. In response, Mr. Aguilar explained that his production was affected by the number of days he was out of the office due to his DCFMLA leave.

24. Further, Mr. Aguilar requested that management not assign Mr. Aguilar to duty days—which would increase his caseload—and that they consider the limitations on his ability to complete cases at his previously satisfactory rate due to his DCFMLA leave. Ms. Andrews, Mr. Rowe and Ms. Smith agreed not to assign Mr. Aguilar more cases for a period but refused to reduce the caseload he was carrying at the time.

25. On or about November 5, 2018, Mr. Aguilar received his Performance Appraisal for fiscal year 2018. Mr. Aguilar received the same or approximately the same score as he had received in 2017 and the positive comments regarding his performance were repeated from 2017. Nevertheless, Defendant added comments regarding lateness of Mr. Aguilar's work and reduced production.

26. Thereafter, on or about December 2018, Mr. Aguilar submitted a request for review for a reconsideration of the performance evaluation because the negative comments were made without properly considering Mr. Aguilar's reduced schedule and ability to produce based on his DCFMLA leave. Defendant never responded to Mr. Aguilar's request for reconsideration.

*Plaintiff Took Additional FMLA Leave*

27. Over the course of 2018, Mr. Aguilar's mother's health improved to the point that he did not exercise his DCFMLA leave between in or about August and in or about November 2018.

However, in or about late 2018, Mr. Aguilar's mother was diagnosed with thyroid cancer, a new medical condition for which she would require additional care.

28. On or about October 16, 2018, Mr. Aguilar submitted a new request for intermittent DCFMLA leave to care for his mother. Mr. Aguilar was entitled to the leave because he had not exhausted the amount of DCFMLA to which he was entitled earlier in 2018.

29. In or about late October 2018, Mr. Aguilar was conditionally approved for intermittent DCFMLA leave.

30. On or about December 26, 2018, Mr. Aguilar requested an amendment to his approved intermittent leave because his mother's health condition had deteriorated, and her treatment plan changed drastically. Accordingly, Mr. Aguilar requested that Defendant approve him for continuous leave to care for her. Ms. Howard granted the request and Mr. Aguilar took continuous DCFMLA leave from on or about January 2, 2019, to on or about February 4, 2019.

*Defendant Failed to Promote Plaintiff*

31. In or about late 2018, Plaintiff qualified for promotion to Investigator II based on his tenure and performance.

32. Upon information and belief, by on or about December 2018, Defendant promoted other Investigator I's to Investigator II positions based on tenure and performance, but they were less qualified than Plaintiff. Additionally, Plaintiff qualified for the promotion and should have been promoted regardless of the number of other Investigators who were promoted.

33. Upon information and belief, employees promoted were less qualified than Plaintiff and had not taken protected FMLA leave.

*Plaintiff Returned from FMLA Leave and Defendant Suspended him*

34. On or about February 19, 2019, just two weeks after Mr. Aguilar returned from continuous leave protected by FMLA, Ms. Andrews proposed to suspend Mr. Aguilar for three days for alleged Failure/Refusal to Follow Instructions.

35. Specifically, Ms. Andrews alleged that on or about February 14, 2019, Mr. Aguilar "deliberately and purposefully" refused to comply with her instruction regarding a case he was investigating and failed to explain his alleged failure.

36. She further stated that, since March 8, 2018, she had had given Mr. Aguilar specific instructions to complete investigative tasks and report content on this case, she had returned the case to Mr. Aguilar on November 21, 2018 to complete and revise, but that Mr. Aguilar repeatedly failed to meet his own stated deadlines to complete the work on the matter.

37. The Proposed Suspension document advised Mr. Aguilar that he had the right to challenge the proposed action, the right to the assistance of an attorney or other representative to do so, and was "encouraged" to submit affidavits or other documents that he would like considered with any written response.

*Plaintiff Responded to his Proposed Suspension*

38. On or about February 27, 2019, Mr. Aguilar submitted a written response to the proposed suspension.

39. In his written response, Mr. Aguilar made several arguments. Amongst the arguments he presented was that he had worked appropriately on the investigation on days he was in the office and that it was well-known to management that agency investigators were generally carrying high caseloads and were overburdened, leading to delayed reports.

40. In support of his arguments, Mr. Aguilar submitted exhibits that included: 1) emails regarding the investigation that served as the basis for the proposed suspension, 2) reports generated from the Body Worn Camera video footage archive showing his login and viewing history, and 3) a transcript of a January 18, 2018 agency meeting.

41. The emails regarding the investigation and his login and viewing information of body worn camera footage were relevant to his argument that he worked appropriately on the investigation when he was on duty and not on FMLA leave.

42. The transcript of the January 18, 2018 agency meeting supported his argument that Defendant was aware of the high caseloads and its effects.

43. On or about March 4, 2019, Mr. Howard issued a final agency decision imposing a three-day suspension for Mr. Aguilar for March 12,13, and 14, 2019.

*Defendant Terminated Plaintiff for his Proposed Suspension Response*

44. On or about March 5, 2019, Ms. Howard issued a Notice of Summary Removal.

45. The facts underlying the Notice of Summary Removal were based on the evidence that Mr. Aguilar provided in support of his February 27, 2019, written response to the proposed suspension. Principally, the Notice of Summary Removal alleged that on or about February 21-27, 2019, Mr. Aguilar; 1) violated Defendant's Body Worn Camera Use Policy, 2) shared confidential open case information with a member of the public; 3) used government time and resources outside of the four hours of administrative time allotted for him to respond to the proposed suspension; and 4) shared confidential open case information with a member of the public.

46. On or about May 14, 2019, Mr. Tobin issued a final agency decision removing Mr. Aguilar from his position and District service.

47. On or about May 15, 2019, Defendant removed Mr. Aguilar from his position as Investigator.

48. As a direct and proximate result of Defendant's actions, Mr. Aguilar has suffered and continues to suffer harm.

**COUNT I**
**Family Medical Leave Act**
**U.S.C. 29 § 2601, *et seq.***
**(Discrimination/Retaliation)**

49. Plaintiff repeats and realleges the allegations in the foregoing paragraphs 1-48 as if fully set forth herein.

50. Plaintiff is an "eligible employee" as defined in 29 U.S.C. § 2611(2).

51. Defendant is an "employer" as defined in 29 U.S.C. § 2611(4)(iii) and 29 U.S.C. § 203(x).

52. Plaintiff engaged in activity that the FMLA protects when:

    a. On or about February 8, 2018, Plaintiff requested intermittent leave under the DCFMLA.

    b. On or about October 16, 2018, Plaintiff submitted a new request for intermittent DCFMLA leave.

    c. On or about December 26, 2018, Plaintiff requested an amendment to his approved intermittent DCFMLA leave.

    d. On or about January 2, 2019, to on or about February 4, 2019, Plaintiff took continuous DCFMLA leave.

53. Defendant took an adverse employment action against Plaintiff when:

    e. By on or about December 2018, Defendant promoted one or more similarly situated employees to the Investigator II positions but did not promote Plaintiff, and used Plaintiff's performance evaluation as the basis for failing to promote him;

9

    f. On or about February 19, 2019, Defendant proposed to suspend Plaintiff for three days for alleged Failure/Refusal to Follow Instructions;

    g. On or about March 4, 2019, Defendant issued Plaintiff a Final Agency Decision imposing a three-day suspension;

    h. On or about March 5, 2019, Defendant issued Plaintiff a Notice of Summary Removal;

    i. On or about May 14, 2019, Defendant issued Plaintiff a Final Agency Decision—Separation;

    j. On or about May 15, 2019, Defendant removed Plaintiff from his position as Investigator.

54. There is a causal connection between the protected activity and the adverse employment action because, *inter alia*, the close temporal proximity between the protected activity and the adverse employment action—including the suspension the Defendant issued Plaintiff just two weeks after Plaintiff returned from DCFMLA, and management's retaliatory attitude towards Plaintiff's use of DCFMLA leave.

55. Defendant has no legitimate business reasons for the adverse action it has taken against Plaintiff.

56. Defendant's forthcoming reasons for the adverse actions it has taken against Plaintiff are pretextual.

57. For Defendant's unlawful retaliation against Plaintiff in violation of 29 U.S.C. § 2601 *et seq.*, Plaintiff is entitled to such legal and equitable relief as will effectuate the purposes of 29 U.S.C. § 2601 *et seq.*, including but not limited to reinstatement, economic and compensatory damages, punitive damages, and reasonable costs and attorneys' fees.

58. Defendant's violations of the FMLA were intentional and malicious; Defendant did not violate the FMLA in good faith with reasonable grounds to believe its actions did not violate the FMLA.

59. As a result of Defendant's illegal retaliation against Plaintiff, he has suffered substantial monetary damages, emotional distress damages, and harm to his professional reputation, and he will continue to sustain damages into the foreseeable future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in his favor against Defendant and award him damages including back pay, front pay, lost benefits, liquidated damages, consequential damages, punitive damages, pre- and post-judgment interest, costs, the increased tax burden on any award, reasonable attorneys' fees, any other relief allowed under the above-referenced statutes, and any other relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

>Respectfully submitted,
>Alan Lescht & Associates, P.C.
>By:  /s
>Laura Nagel (#1013962)
>1825 K Street NW, Suite 750
>Washington, DC 20006
>Tel: (202) 463.6036
>Fax: 202.463.6067
>laura.nagel@leschtlaw.com